T.C. Memo. 2001-57

UNITED STATES TAX COURT

ROBERT WISH AND ERIN WISH RIEHS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3037-99.                        Filed March 9, 2001.

R examined Ps' 1981 tax return and issued a notice
of deficiency.  Anticipating an assessment, Ps posted a
cash bond with R.  Ps subsequently filed a refund claim
for the 1985 tax year, the proceeds of which were to be
used to offset any shortfall between the bond and the
assessment.  R denied the refund claim, and the
assessment exceeded the bond.  Ps then filed a claim
for an abatement of interest for the 1981 tax year.  Ps
supported their abatement claim with allegations of
errors or delays occurring during the processing of
their refund claim for 1985.  R denied their claim for
abatement of interest.

<u>Held</u>, the delay in payment of the 1981 outstanding
tax liability was not attributable to procedures
involved in the processing of the refund claim for 1985
so as to allow relief under sec. 6404(e), I.R.C., 1986.

Joseph E. Mudd and Linas N. Udrys, for petitioners.

Gary M. Slavett, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  On August 19, 1998, respondent issued a notice of final determination denying petitioners' request for an abatement of interest under section 6404(e) for their 1981 tax year.[1]  The issue for decision is whether respondent abused his discretion in failing to abate the assessment of interest.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time the petition was filed, petitioners resided in Laguna Hills, California.

1981 Tax Return

During 1981, petitioners invested in a partnership known as Hillcrest Securities.  Respondent examined petitioners' 1981 tax year, concentrating on petitioners' tax treatment of their partnership interest in Hillcrest Securities.  On October 9, 1986, respondent issued a notice of deficiency for 1981.

_____

[1]  References to sec. 6404(e) are to sec. 6404(e) before amendment by sec. 301 of the Taxpayer Bill of Rights 2, Pub. L. 104-168, 110 Stat. 1452, 1457 (1996).  Unless otherwise stated, all other section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

On June 16, 1988, anticipating that respondent would assess a deficiency for the 1981 tax year, petitioners deposited $100,000 with respondent in the form of a bond. Petitioners requested that respondent apply $81,092 to the deficiency and $18,908 to penalties.

On January 28, 1991, respondent assessed the deficiency for 1981 in the amount of $81,092. Respondent also assessed a negligence penalty in the amount of $4,055 and interest in the amount of $116,564.26 pursuant to section 6621(c) (subsequently repealed by the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7721(b), 103 Stat. 2106, 2399). On April 15, 1991, because the bond was insufficient to offset the deficiency, interest, and penalty assessed, respondent mailed petitioners a Reminder of Unpaid Tax for the 1981 tax year. The reminder stated that petitioners had an outstanding balance of $104,512.36 with regard to the assessment for the 1981 tax year (including additional interest).[2] Petitioners expected to pay the remaining liability from proceeds of a refund claim for the 1985 tax year.

On April 13, 1992, respondent issued a notice of intent to levy with regard to the assessment for the 1981 tax year. In June 1992, Mr. Wish contacted Specialist Todd Brunk of respondent's Problem Resolution Office to request a hold on

---

[2] ($81,092 + $4,055 + $116,564.26) - $100,000 + $2,801.10. The $2,801.10 represented additional interest accrued from the date of assessment to the date of the notice.

collection based upon petitioners' refund claim for 1985. On June 22, 1992, Specialist Brunk accommodated petitioners and placed a collection hold on the outstanding balance for the 1981 tax year until November 28, 1992.[3] Because petitioners requested and were granted extensions, the collection hold remained in place until at least June 29, 1995.

1985 and 1988 Amended Tax Returns

On August 11, 1990, petitioners filed a Form 1040X, Amended U.S. Individual Income Tax Return, for 1985 seeking a refund of $64,408 by carrying back a $330,000 net operating loss generated in another tax year. On August 27, 1990, respondent mailed a notice to petitioners stating that their refund claim was incomplete and requesting the year in which the net operating loss allegedly was generated. In conjunction with the 1985 amended return, on October 17, 1990, petitioners filed a Form 1040X for 1988 claiming additional losses of $340,000. The additional losses created a net operating loss for 1988 in the amount of $336,097, of which they had carried back $330,000 to 1985. On November 8, 1990, respondent mailed petitioners a letter stating that the Form 1040X for 1985 was being processed. On September 5, 1991, petitioners filed a second Form 1040X for

---

[3] Sometime after the date of assessment for the 1981 tax year and prior to Specialist Brunk's granting Mr. Wish's request, petitioners' attorney had also requested a hold on collection for petitioners' 1981 tax year. The IRS granted that request.

1985 claiming a refund of only $36,408.[4]

Examination

On January 3, 1992, respondent advised petitioners that their 1988 amended return and, by implication, their refund claim for 1985[5] were being reviewed by Examiner Monte Kruse. Examiner Kruse issued various information document requests (IDR's) to petitioners, received the relevant information, and evaluated several tax issues. On August 1, 1992, Examiner Kruse issued a 30-day letter proposing a deficiency for the 1988 tax year with regard to various issues. In the 30-day letter, Examiner Kruse stated that petitioners' claim for additional losses had been considered; however, he allowed only $3,090 of those losses. Because Examiner Kruse proposed additional income items, the allowed loss did not create a refund or generate net operating losses to be carried back to 1985.

Appeals

On August 26, 1992, petitioners verbally requested that respondent's Appeals Office (Appeals) review the 1988 tax year. On September 8, 1992, Examiner Kruse prepared a Special Handling Notice to forward petitioners' materials to Appeals. On

---

[4] On the September 5, 1991, Form 1040X, petitioners reduced the net operating loss carryback (from 1988) to $190,000. This amendment created a smaller refund request.

[5] References to the refund claim for 1985 are to both the August 11, 1990, Form 1040X and the September 5, 1991, Form 1040X.

September 22, 1992, petitioners filed a written protest and request for Appeals to review the case.  On December 3, 1992, Appeals received the materials related to petitioners' case.  In February or March of 1993, because Examiner Kruse had not prepared a Revenue Agent Report (RAR), the case was sent back to respondent's examination division.

Second Examination

Revenue Agent Jimmy Bose was assigned to petitioners' case. Beginning in April 1993, Agent Bose issued IDR's to petitioners and prepared draft RAR's.  On October 8, 1993, Agent Bose prepared a complete RAR with explanations for the 1988 tax year. Petitioners and Agent Bose continued working toward a resolution of the case.  On December 16, 1993, Agent Bose issued another IDR and, on July 8, 1994, issued a summons to petitioners.  On August 17, 1994, Agent Bose prepared a RAR with regard to the 1985 tax year, disallowing the net operating loss carryback from 1988 and denying the claimed refund for 1985.

On October 19, 1994, respondent issued a notice of deficiency to petitioners for their 1988 tax year.  On December 16, 1994, petitioners filed a petition with this Court seeking a redetermination of the deficiency for 1988 as determined by respondent.  On January 23, 1995, respondent issued an official notice of disallowance of the claimed refund for 1985.  On March 21, 1996, the Court entered a stipulated decision

with regard to the 1988 tax year providing for an overpayment of $2,194.

## Interest Abatement Claim for 1981

On June 27, 1996, petitioners filed a Request For Abatement Of Interest (interest abatement claim) with respondent. In the interest abatement claim, petitioners stated that "due to the appearance that there was a realistic possibility of substantial refund for 1985 with interest in an amount sufficient to pay all of the * * * [1981] remaining liability, Problem Resolution agreed that the case would be placed on hold." Petitioners asserted that the "1988 audit, however, became a substantial comedy of delays." Petitioners alleged that the audit of the 1988 tax year was neither performed adequately nor timely. As a result, petitioners argued:

> Had the 1988 audit been completed in a reasonable manner, the tax refunds that would have discharged the liability, or the lack thereof, would have * * * adequately determined the manner in which Mr. Wish could have and would have paid the entire liability including interest. As of a matter of fact, as soon as the liability was determined, Mr. Wish made a substantial payment on the balance of the income tax liability.

Respondent found no errors or delays to support an abatement of interest and therefore denied petitioners' interest abatement claim.

## OPINION

Section 6404(e)(1) provides that the Commissioner may abate

the assessment of interest on: (1) Any deficiency attributable to any error or delay by an officer or employee of the Internal Revenue Service (IRS) in performing a ministerial act or (2) any payment of any tax described in section 6212(a) to the extent that any error or delay in such payment is attributable to such officer or employee being erroneous or dilatory in performing a ministerial act.[6] An error or delay is taken into account only (1) if no significant aspect of such error or delay can be attributed to the taxpayer and (2) after the IRS has contacted the taxpayer in writing with respect to such deficiency or payment. See sec. 6404(e)(1).

The Treasury has interpreted a ministerial act as "a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place."[7] See sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed.

---

[6] In 1996, sec. 6404(e) was amended under sec. 301 of the Taxpayer Bill of Rights 2, Pub. L. 104-168, 110 Stat. 1452, 1457 (1996), to permit the Commissioner to abate interest with respect to an "unreasonable" error or delay resulting from "managerial" and ministerial acts. This amendment, however, applies to interest accruing with respect to deficiencies or payments for tax years beginning after July 30, 1996; therefore, the amendment is inapplicable to the case at bar. See Woodral v. Commissioner, 112 T.C. 19, 25 n.8 (1999).

[7] The Senate Finance Committee stated that the "IRS may define a ministerial act in regulations." S. Rept. 99-313, at 209 (1986), 1986-3 C.B. (Vol. 3) 1, 209.

Reg. 30162, 30163 (Aug. 13, 1987).[8]

This Court may order an abatement where the Commissioner's failure to abate interest was an abuse of discretion. See sec. 6404(i). In order to prevail, the taxpayer must demonstrate that in not abating interest, the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law. See <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999).

In enacting section 6404(e), Congress intended for the Commissioner to abate interest "where failure to abate interest would be widely perceived as grossly unfair." H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208. Congress, however, did not intend that abatement "be used routinely to avoid payment of interest." <u>Id.</u>

Petitioners argue that from January 1990 to December 16, 1994, respondent committed errors or delays while processing their refund claim for 1985; i.e., committed errors or delays in performing ministerial acts. Petitioners specifically complain

---

[8] The final U.S. Treasury regulations under sec. 6404 were issued on Dec. 18, 1998. See sec. 301.6404-2(b)(2), Proced. & Admin. Regs., 63 Fed. Reg. 70012, 70013 (Dec. 18, 1998). The final regulations contain the same definition of a ministerial act as the temporary regulations. Because the final regulations, however, incorporate amendments to sec. 6404 pursuant to the Taxpayer Bill of Rights 2, Pub. L. 104-168, 110 Stat. 1452, 1457 (1996), they are inapplicable here. See <u>id.</u> at 70012.

that their 1985 and 1988 amended returns were referred for examination on November 19, 1990, but Examiner Kruse delayed the examination until January 3, 1992, when he first contacted petitioners. Petitioners also argue that the period involved in transferring petitioners' files from Examiner Kruse's office to Appeals (September 23, 1992, to December 3, 1992) was excessive. Additionally, petitioners claim that between January 1993 and April 29, 1993, respondent was dilatory in forwarding their files from Appeals to Agent Bose. Further, petitioners argue that from May 1993 to October 1994, Agent Bose reaudited the amended returns instead of simply issuing the RAR. Because petitioners intended to apply the anticipated refund as payment for any liabilities outstanding as to the 1981 tax year, petitioners claim that the alleged errors or delays in the refund claim for 1985 relate to the 1981 tax year. Accordingly, petitioners contend that they are entitled to an abatement of interest under section 6404(e) as to the 1981 tax year.

Respondent counters that no errors or delays in performing ministerial acts occurred during the processing of the refund claim for 1985. Further, respondent argues that even if any such errors or delays were committed, petitioners cannot be allowed an abatement of interest for the 1981 tax year under section 6404(e) with regard to such errors or delays. In other words, respondent claims that the errors or delays were not associated with the

processing of the 1981 tax return. See sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30162, 30163 (Aug. 13, 1987). Finally, respondent argues that the accrual of interest during the period in issue is solely attributable to petitioners' decision to seek a hold (based on the claim for refund) on collection and not to pay the outstanding tax liability.

In the instant case, petitioners have not specifically addressed upon which prong of section 6404(e)(1) they base their claim. In enacting section 6404(e)(1)(A), Congress vested the Commissioner with discretion to abate interest on any deficiency attributable in whole or in part to an error or delay committed by an officer or employee of the IRS in performing ministerial acts. For example, Congress explained that "a delay in the issuance of a statutory notice of deficiency after the IRS and the taxpayer have completed efforts to resolve the matter could be grounds for abatement of interest." S. Rept. 99-313, at 209 (1986), supra at 209. Petitioners have not alleged that respondent committed any errors or delays in determining or assessing petitioners' tax deficiency with regard to the 1981 tax year.

Errors or delays in the determination or assessment of a deficiency, however, do not constitute the sole basis for relief under section 6404(e). Congress has also provided relief for any

errors or delays in the payment of tax to the extent that such errors or delays are attributable to the Commissioner being erroneous or dilatory in performing ministerial acts.  See sec. 6404(e)(1)(B); Gross v. Commissioner, T.C. Memo. 2000-44.

Petitioners claim that respondent's untimely processing of their refund claim for 1985 delayed the ultimate payment of their 1981 tax liability.  It appears that petitioners seek an abatement of interest pursuant to section 6404(e)(1)(B).  We therefore analyze petitioners' claim under that provision.

Petitioners assume that the late payment of the outstanding tax liability for 1981 and the associated accrual of interest are attributable (within the meaning of section 6404(e)(1)(B)) to the various steps they cite with regard to the processing of the refund claim for 1985.  We, however, cannot characterize those steps as the cause of the delay in payment of the outstanding tax liability for 1981.  The acts described by petitioners are part of the administrative process of resolving the refund claim for 1985 and not a direct part of the payment process for the 1981 tax year, a different tax year.  The only relation between the refund claim for 1985 and the payment of the 1981 tax liability is that created by petitioners in deferring the payment of the 1981 tax liability on the assumption that the refund claim for 1985 would be granted.  We thus do not find the requisite connection between the alleged errors or delays in the procedures

employed for processing the 1985 refund claim and the accrual of interest that is the subject of petitioners' interest abatement claim for the 1981 tax year.[9]

We note that a significant aspect of the delay in the ultimate payment of the 1981 tax liability is attributable to petitioners. They chose to await the determination of the refund claim for 1985, while all along requesting holds on collection.

We have considered all of the arguments raised by the parties and to the extent not discussed herein find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

_____

[9] This is not the case, for example, in which a claim for refund was allowed, and, after a specific request by the taxpayer to apply the refund to the tax year in issue, the Commissioner failed to act on the taxpayer's request. See <u>Mankita v. Commissioner</u>, T.C. Memo. 1999-420 (in which we rejected a taxpayer's claim, under the facts of that case, that an abatement of interest should have been allowed because the Commissioner had failed to apply a refund to the tax year in issue).